UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
LYNN LITTLE,

                Plaintiff,                      **MEMORANDUM AND ORDER**

        v.                                      20-CV-1979 (RPK) (MMH)

CITY OF NEW YORK DEPARTMENT OF
FINANCE, CARMELITA HORTON,
MARY SCHEMAN-STELLA, AKUSTA
PANTIN, HAROLD HUTCHER,

                Defendants.
-----------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

        In this lawsuit, *pro se* plaintiff Lynn Little principally alleges that she suffered gender discrimination and retaliation in connection with her employment at the City of New York Department of Finance. For the reasons discussed below, defendants' motion to dismiss Little's claims is granted in part and denied in part.

## BACKGROUND

        The following facts are drawn primarily from the second amended complaint ("SAC") and are assumed true for the purposes of this order. Because plaintiff proceeds *pro se*, the Court considers both the facts in her SAC and "the facts and allegations contained in [her] additional submissions." *Manley v. New York City Police Dep't*, No. 05-CV-679 (FB) (LB), 2005 WL 2664220, at *1 (E.D.N.Y. Oct. 19, 2005).

        Plaintiff began working as a clerical associate at the New York Department of Finance on October 15, 2018. Rosenfeld Decl., Ex. A 1 (Dkt. #36). She alleges that while she worked in the Department of Finance's Research and Correction Unit, defendant Harold Hatcher "yelled all day, every day" on the phone. SAC 2. Plaintiff complained to her supervisor, defendant Carmelita

1

Horton, about Hatcher "yelling like he was in a park," but she was told that "the Agency could not force Harold Hatcher to seek medical attention for his hearing deficit." *Id*. at 2–3. Plaintiff claims that her work performance was negatively impacted by Hatcher's "yelling." *Id.* at 3. She further alleges that Hatcher "violated [her] right to a healthy work environment and subjected [her] to age discrimination by him for not seeking a reasonable accommodation for his hearing deficiency." *Ibid*.

On March 14, 2019, plaintiff received a negative performance review. *Ibid*.; First Am. Compl. ("FAC") 4 (Dkt. #7). The review gave her three ratings of "Good" and one rating of "Marginal," as well as an overall evaluation of "Marginal." SAC 2. Later that day, plaintiff was transferred to the Department of Finance's Land Records Division. *Id*. at 3. Plaintiff states that "the [t]ransfer was effected through" the negative performance review, but that she was actually transferred in retaliation for complaining about Hatcher. *Id*. at 1, 3. She also claims, without more detail, that Horton subjected her to "derogatory comments." *Id*. at 6.

Plaintiff alleges that her supervisor in the Land Records Division, defendant Akustaa Pantin, touched her inappropriately and engaged in "Visual Sexual Harassment." *Id*. at 4, 9. According to plaintiff, Pantin touched her "upper arm area" without consent on three occasions, and he "look[ed] at [her] body and made [her] feel uncomfortable." *Id*. at 4; Opp'n 8 (Dkt. #40).

On the same day of one of the incidents involving unwanted touching by Pantin—April 22, 2019—a visiting supervisor asked plaintiff to file a set of twelve documents. SAC 3. The supervisor made the request around 4:00 p.m., and plaintiff was unable to file the documents before the close of business at 5:00 p.m. *Ibid*.

That evening, plaintiff texted the Deputy in the Land Records Division, defendant Mary Scheman-Stella, and asked to speak with her the next day "to address an issue of unwanted

2

touching that occurred on my upper arm area on or about Thursday of last week in the front area and today in KP's space while I was sitting in his guest chair." Opp'n 8. Plaintiff stated that such touching had occurred three times, that she "[b]elieve[d] it's calculated," and that she "need[ed] to address it now to stop it." *Ibid.*; SAC 3. At 8:00 a.m. the next morning, Scheman-Stella texted back, "Yes you can talk to me." SAC 3. But plaintiff states that the conversation was "not the first call of business" that day. SAC 3, 9.

Scheman-Stella later notified plaintiff that her name appeared in a report of incomplete filings—apparently referring to the documents that plaintiff had not filed before close of business on April 22. *Id.* at 4. Scheman-Stella issued plaintiff a "Memorandum of Failing to Complete Assigned Tasks." *Ibid.* Plaintiff claims that she was never trained or informed of the procedure for filing the documents. *Ibid.* She further claims that Scheman-Stella "harass[ed] and antagonize[d] [her] by yelling and screaming across the room and issuing Memorandums for Failure to Complete Assigned Tasks." *Ibid*.

Plaintiff alleges that Scheman-Stella terminated her employment on May 30, 2019. FAC 9; SAC 11.

On August 20, 2019, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), claiming that she was discriminated against based on her sex and that she had been retaliated against for engaging in protected activity. Rosenfeld Decl., Ex. A 1. The EEOC provided plaintiff with a right-to-sue letter on January 24, 2020. FAC 6–7.

Plaintiff then filed this suit on April 27, 2020. Compl. 1 (Dkt. #1). The Court construes plaintiff's complaint as raising (i) a claim that Hatcher and the Department of Finance violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; (ii) a claim that Scheman-Stella breached her fiduciary duties in violation of New York law; and (iii) a claim that

3

every defendant but Hatcher committed gender discrimination, created a hostile work environment, and retaliated against plaintiff in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.

On November 24, 2021, defendants moved to dismiss plaintiff's complaint.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint based on "failure to state a claim upon which relief can be granted." To avoid dismissal on that basis, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing Fed. R. Civ. P. 8). The facial "plausibility standard is not akin to a 'probability requirement.'" *Ibid*. (quoting *Twombly*, 550 U.S. at 556). But it requires a plaintiff to allege sufficient facts to enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid*. In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept all facts alleged in the complaint as true. *Ibid*. But it need not adopt "[t]hreadbare recitals of the elements of a cause of action" that are "supported by mere conclusory statements." *Ibid*.

The complaint of a *pro se* plaintiff must be "liberally construed, and . . . however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quotations and citations omitted). *Pro se* status, however, does not "exempt a party from compliance with relevant rules of procedural

4

and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## DISCUSSION

Defendants' motion to dismiss is granted as to all of plaintiff's claims except for her retaliation claim. Plaintiff's claims against the individual defendants fail because plaintiff cannot sue individual defendants under Title VII and the ADEA, and because plaintiff's breach of fiduciary duty claim is inadequately pleaded. Moreover, plaintiff has not adequately pleaded against her employer claims of gender discrimination, hostile work environment, or age discrimination. But plaintiff has set out sufficient facts to survive a motion to dismiss on her retaliation claim.

### I. Claims Against the Individually Named Defendants

Plaintiff's claims against the individual defendants are dismissed.

*Title VII*. Plaintiff's Title VII claims against Horton, Scheman-Stella, and Pantin are deficient. Title VII is directed at prevented unlawful employment practices by *employers*. *See* 42 U.S.C. § 2000e-2(a). Accordingly, the Second Circuit has made clear that "an individual defendant cannot be held personally liable under Title VII." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 n.8 (2d Cir. 2006); *see Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995) ("We now hold that individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII."), *abrogated on other grounds*, *Burlington Ind. v. Ellerth*, 524 U.S. 724 (1998).

*ADEA*. Plaintiff's ADEA claim against Hatcher fails for the same reason. Because the ADEA "was modeled after Title VII," "[c]ourts in this circuit have . . . consistently found that the ADEA, like Title VII, does not impose liability on individuals." *Williams v. New York City Dep't. of Educ.*, No. 17-CV-1996 (AJN), 2018 WL 4735713, at *4 (S.D.N.Y. Sept. 29, 2018) (citation

5

omitted); *see* 29 U.S.C. § 623(a); *see also Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011) ("[D]ismissal of the Title VII and ADEA claims against the individual Defendants was appropriate as neither statute subjects individuals, even those with supervisory liability over the plaintiff, to personal liability."). Plaintiff's ADEA claim against Hatcher is therefore dismissed with prejudice.

*Breach of fiduciary duties*. Insofar as plaintiff seeks to press a claim against Scheman-Stella for breach of fiduciary duties, *see* SAC 8, that claim is dismissed. "To state a cause of action to recover damages for breach of fiduciary duty, a plaintiff must allege: '(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020) (citation omitted). Here, plaintiff has not alleged facts sufficient to show any fiduciary relationship on the part of Scheman-Stella. "A fiduciary relationship exists under New York law 'when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" *Flickinger v. Harold C. Brown & Co., Inc.*, 947 F.2d 595, 599 (2d Cir. 1991) (citation omitted). In contrast, "the employer-employee relationship does not, on its own, create a fiduciary relationship." *Daniels v. Am. Airlines*, No. 19-CV-03110 (MKB), 2020 WL 9816000, at *25 (E.D.N.Y. Sept. 4, 2020). Plaintiff appears to contend that Scheman-Stella failed to perform certain work duties—for example, maintaining filing equipment or providing storage space for documents. SAC 8, 10. But she alleges no facts suggesting the existence of a fiduciary relationship that was breached. Accordingly, defendants' motion to dismiss plaintiff's fiduciary-duty claim is granted.

## II. Claims Against Plaintiff's Employer

Construing plaintiff's claims against her employer as being brought against the City of New York, I grant in part and deny in part defendants' motion to dismiss those claims. Plaintiff's

claims against the City of New York Department of Finance should have been brought against the City of New York, because the Department of Finance is a non-suable entity. *See* N.Y. City Charter Ch. 17 § 396; *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 159–60 (2d Cir. 2008). But the City has not sought dismissal on that ground and addresses the claims on the merits. I therefore construe plaintiff's claims against the City of New York Department of Finance as being brought against the proper defendant, the City of New York, and direct the Clerk of Court to update the case caption accordingly. *See, e.g.*, *Thompson v. Grey*, No. 08-CV-4499 (JBW), 2009 WL 2707397, at *5 (E.D.N.Y. Aug. 26, 2009) ("Where plaintiff's claims are brought against non-suable entities, the court construes them as brought against the City of New York."); *Philippe v. NYC Dep't of Educ.*, No. 11-CV-3693 (NGG) (CLP), 2012 WL 4756073, at *1 n.1 (E.D.N.Y. Oct. 3, 2012) ("Although the [Department of Education] is not a suable entity under the New York City Charter, the court construes Plaintiff's action as being brought against the City of New York."). So construed, plaintiff's claims alleging gender discrimination and hostile work environment are not adequately pleaded, but plaintiff's retaliation claim survives. The motion to dismiss the ADEA claims against the City is also granted.

**A. Any gender-discrimination claim against the City is dismissed without prejudice.**

Insofar as plaintiff seeks to press a gender-discrimination claim against the City, that claim is dismissed. To state a claim for gender discrimination, a plaintiff must plausibly allege that "(1) she was within [a] protected class; (2) she was qualified for [a] position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Walsh v. New York City Housing Authority*, 828 F.3d 70, 75 (2d Cir. 2016) (citation omitted).

Here, plaintiff has not plausibly alleged that she suffered any adverse employment action because of her gender. To adequately plead that an adverse employment action was motivated by

7

gender discrimination, a female plaintiff must offer direct evidence of discriminatory intent or at least plausibly allege "that she was treated differently from 'similarly situated' males." *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (citation omitted); *see Montana v. First Fed. Sav. and Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989) ("To establish a prima facie case of sex discrimination under Title VII, plaintiff was required to show that she was treated less favorably than comparable male employees in circumstances from which a gender-based motive could be inferred."). Plaintiff fails to make either showing here. Accordingly, any gender-discrimination claim in the complaint is dismissed.

### B. Plaintiff's hostile-work-environment claim against the City is dismissed without prejudice.

Plaintiff fails to allege a plausible hostile-work-environment claim against the City.

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court has held that "[t]he phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted). To prevail on a hostile work environment claim, a plaintiff must show, among other requirements, harassment that "was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (citation omitted). "[R]epeated touching of intimate parts of an unconsenting employee's body is by its very nature severely intrusive." *Redd v. New York Div. of Parole*, 678 F.3d 166, 179 (2d Cir. 2012). But "[c]asual contact" such as "[a] hand on the

8

shoulder" or a "a brief hug" would not generally "create a hostile environment in the absence of aggravating circumstances such as continued contact after an objection." *Id.* at 177 (quoting *Patton v. Keystone RV Co.,* 455 F.3d 812, 816 (7th Cir. 2006)) (second alteration in original); *see Carter v. State of New York*, 151 F. App'x 40, 41 (2d Cir. 2005). Applying these standards, courts in this circuit have found plaintiffs failed to state a claim based on allegations of touching a "[p]laintiff's shoulder and bicep on three occasions," *Bell v. Baruch Coll.—CUNY*, No. 16-CV-8378 (VSB), 2018 WL 1274782, at *5 (S.D.N.Y. Mar. 9, 2018); touching a plaintiff's "shoulders on three occasions," *Lonergan-Milligan v. New York State Off. of Mental Health*, No. 14-CV-274S, 2018 WL 6605686, at *4 (W.D.N.Y. Dec. 17, 2018); and a manager's "persistently putting his arm on [an employee's] shoulder while speaking to her in an office setting," along with telling the employee "that she 'would look hot' in red coveralls," *MacMaster v. City of Rochester*, No. 05-CV-6509, 2007 WL 2892015, at *9 (W.D.N.Y. Sept. 28, 2007).

Plaintiff has failed to adequately plead a claim of hostile work environment program under these principles. Plaintiff's allegations that Pantin touched her "upper arm area" on three occasions and "kept looking at [her] body" on at least one other occasion, Opp'n 8; SAC 4, when viewed in the light most favorable to her, do not constitute allegations of conduct "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Alfano*, 294 F.3d at 373 (citation omitted). Instead, they closely resemble allegations that courts in this circuit have previously found not "so extraordinarily severe as to be actionable under Title VII." *MacMaster,* 2007 WL 2892015, at *9. Accordingly, plaintiff's hostile-work-environment claim is dismissed.

### C. Plaintiff's retaliation claim against the City survives.

Plaintiff has adequately pleaded that the City retaliated against her in violation of Title VII.

9

Title VII prohibits an employer from discriminating against an employee "because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To make out a *prima facie* case of retaliation, a plaintiff must ultimately demonstrate that "(1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014). But at the motion-to-dismiss stage, "the allegations in the complaint need only give plausible support to the . . . prima facie requirements." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018). Accordingly, to survive a motion to dismiss, the plaintiff must only "plausibly allege that: (1) defendants discriminated—or took an adverse employment action— against [her], (2) because [s]he has opposed any unlawful employment practice." *Ibid.*

Plaintiff has satisfied that standard. She alleges that she was fired because she complained about being sexually harassed by Pantin. SAC 4. And her allegations regarding the timing of her firing are sufficient to give rise to an inference of retaliatory intent. While the Second Circuit has "not 'drawn a bright line' defining the maximum time period that can give rise to an inference of causation, six weeks fits comfortably within any line [the court] might draw." *Nagle v. Marron*, 663 F.3d 100, 111 (2d Cir. 2011) (citation omitted); *see, e.g.*, *White v. Dep't of Corr. Servs.*, 814 F. Supp. 2d 374, 390 (S.D.N.Y. 2011) ("[T]he passage of approximately one month between the protected activity and the retaliation is a sufficiently short period of time for a reasonable jury to determine that the two events were causally connected."); *Offor v. Mercy Med. Ctr.*, 676 F. App'x 51, 54 (2d Cir. 2017) ("[Defendant] put [plaintiff] on . . . probation only one month after she

10

retained an attorney, and that temporal proximity is enough at this stage to give rise to an inference of retaliatory intent."); *Joseph v. Ownes & Minor Distrib., Inc.*, 5 F. Supp. 3d 295, 319 (E.D.N.Y. 2014) ("Plaintiff alleges that his first complaint to management was on August 30, 2010, and he was terminated one month later. This is sufficient to meet Plaintiff's 'minimal' burden to show a causal connection at the *prima facie* stage."). Here, the complaint alleges that plaintiff reported sexual harassment by Pantin on April 22, 2019, and was fired on May 30, 2019. FAC 4. That temporal proximity suffices to plead a causal connection at this stage of the case.

Defendants' contrary arguments lack merit. Defendants contend that plaintiff was fired because she failed to perform her job satisfactorily, citing negative performance reviews and written reprimands that plaintiff received. Opp'n 12, 14. But at the motion-to-dismiss stage, plaintiff's allegations "need only give plausible support to the reduced prima facie requirements that arise . . . in the initial phase of a Title VII litigation," *Duplan*, 888 F.3d at 625, and this Court must consider only the allegations in the complaint and draw all reasonable inferences in plaintiff's favor, *Penguin Grp.*, 609 F.3d at 34. Under this standard, plaintiff has adequately pleaded retaliation. Accordingly, defendants' motion to dismiss is denied with respect to plaintiff's retaliation claim.

### D. Plaintiff's ADEA claim against the City is dismissed without prejudice.

Plaintiff's allegations fail to establish a plausible age-discrimination claim against the City. Under the ADEA, it is unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of *such individual's* age." 29 U.S.C. § 623(a)(1) (emphasis added). Plaintiff identifies no facts suggesting that the City treated her differently because of *her* age. For example, plaintiff does not allege that the City considered her age when terminating her employment or transferring her to the Land Records Division. Plaintiff contends only that Hatcher "yell[ed] all day everyday" because

11

"Hatcher was older in age," but Hatcher's alleged failure "to obtain a reasonable accommodation for his hearing deficiency" does not constitute unlawful age discrimination, even if it "was distracting and precluded the Plaintiff from performing her [t]ask[s] and [a]ssignments." SAC 7.

## CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part. Plaintiff's Title VII and ADEA claims against the individually named defendants are dismissed with prejudice, because the defects with these claims are "substantive" and cannot be cured with "better pleading." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). The Court construes plaintiff's claims against the Department of Finance as against the City of New York, and the Clerk of Court is directed to update the case caption accordingly. Defendants' motion to dismiss plaintiff's retaliation claim against the City of New York is denied. Plaintiff's gender discrimination, harassment, retaliation, and age discrimination claims against the City of New York are dismissed without prejudice, as is plaintiff's fiduciary-duty claim against Scheman-Stella. These claims are dismissed without prejudice because it is possible that a valid claim might be stated were additional supporting facts set out in an amended complaint. *See Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999). Within 30 days, plaintiff may file an amended complaint that addresses the defects outlined in this memorandum.

Absent an amended complaint, litigation will continue on plaintiff's remaining claim.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: September 28, 2022
      Brooklyn, New York

12